UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHERWIN-WILLIAMS COMPANY, | ) | Case No.: 1:16 CV 2355 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| ADVANCED COLLISION CENTER | ) | |
| OF MOBILE, INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

On September 9, 2016, Plaintiff Sherwin-Williams Company ("Plaintiff" or "Sherwin-Williams") filed this breach of contract claim against Defendant Advanced Collision Center of Mobile, Inc. ("ACC") and Defendant Danny Woodard ("Woodard") (collectively, "Defendants"), invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. Currently pending before the court is Defendants' Motion to Dismiss for Lack of Jurisdiction or, in the alternative, Motion to Transfer Venue to the Southern District of Alabama ("Motion to Dismiss") (ECF No. 9). For the following reasons, the court grants Defendants' Motion to Dismiss and hereby dismisses the case.

## I. FACTUAL BACKGROUND

Sherwin-Williams, an Ohio corporation, is in the business of manufacturing and selling automotive paints, coatings, and related products. (Compl. ¶ 1, ECF No. 1.) ACC is in the business of repairing damaged vehicles. (Mot. Dismiss Ex. 1, Affidavit of Danny Woodard ("Woodard Aff.") ¶ 2, ECF No. 9-1.) To that end, ACC applies paint and other paint-related products to its customers' vehicles. (*Id.* at ¶ 3.) At the time of its dealings with Sherwin-Williams, ACC had only one place

of business, which was located in Mobile County, Alabama.[1]  (*Id.* at ¶ 2.)  Woodard, a resident of Mobile County, Alabama, is the president and sole shareholder of ACC.  (*Id.* at ¶ 1.)

In 2012, a Sherwin-Williams area sales manager, Richard LaFrance ("LaFrance"), personally visited ACC and placed telephone calls to Woodward to discuss purchasing paint products from Sherwin-Williams.  (*Id.* at ¶ 3.) LaFrance represented to Woodard that he worked out of Florida, and he provided Florida-based contact information to Woodard.  (*Id.*)

On November 12, 2012, ACC and Sherwin-Williams entered into a supply contract ("Supply Agreement"), which provided that Sherwin-Williams sell automotive paints and coatings to ACC at a 10% discount.  (Compl. ¶¶ 6, 7, 9.)  Sherwin-Williams provided a prepaid discount of $65,000 to ACC.  (*Id.* at ¶ 7.)  In exchange, ACC agreed to purchase its automotive paint products exclusively from Sherwin-Williams, from November 13, 2012, until the date upon which net sales of the paints and coatings equaled $350,000.  (*Id*. at ¶ 6.)  Additionally, in January 2013, Woodard entered into a written guaranty ("Guaranty"), wherein he personally guaranteed payment and performance by ACC under the Supply Agreement.  (*Id.* at ¶ 11.)  The Guaranty also required Woodard to pay Sherwin-Williams the full amount under the Agreement if ACC failed to pay.  (*Id.*)

A Sherwin-Williams representative from Ohio signed the Supply Agreement on behalf of Sherwin-Williams.  (Resp. Ex. A, Affidavit of Vince Caruso ("Caruso Aff.") ¶ 3, ECF No. 11-1.) LaFrance hand-delivered both the Supply Agreement and Guaranty to Woodard in Mobile, Alabama. (Woodard Aff. ¶ 4.)  Woodard executed both documents in Mobile, then gave the signed documents to a Sherwin-Williams representative in Mobile.  (*Id.*)  None of the negotiations or discussions took

---

[1]  ACC now has two business locations, one in Mobile, Alabama and another in Semmes, Alabama.  (Woodard Aff. ¶ 2.)

place in Ohio, and Woodard never communicated over the telephone with a Sherwin-Williams representative in Ohio.  (*Id.* at ¶¶ 3, 4.)

Following the execution of the Supply Agreement, ACC began ordering automotive paint products from Sherwin-Williams's location in Mobile, Alabama.  (*Id.* at ¶ 5.)  ACC did not place any orders to any of Plaintiff's entities or representatives in Ohio.  (*Id.*)  Representatives from Sherwin-Williams's Mobile location picked up all of ACC's payments at ACC's premises.  (*Id.* at ¶ 6.)  On several occasions, Sherwin-Williams sent sales and technical personnel to ACC in order to train the ACC staff and to deal with a series of issues that ACC was experiencing with the paint products.  (*Id.* at ¶ 7.)  None of these personnel were sent from Sherwin-Williams's Ohio locations. (*Id.*)  In addition, Woodard avers that he has never been to Ohio, that ACC never had any dealings with any of Sherwin-Williams's Ohio locations, that ACC has never had any income or revenue from businesses in Ohio, and that ACC has never transacted or solicited any business in Ohio.  (*Id.* at ¶¶ 9–20.)

Sherwin-Williams monitored the Supply Agreement from its headquarters in Ohio, maintained ACC's account in Ohio, and sent monthly statements to ACC from Ohio.  (Caruso Aff. ¶ 5.)  On December 15, 2015, Sherwin-Williams sent Defendants a letter notifying them that a failure to purchase automotive paint products exclusively from Sherwin-Williams constitutes a breach of the Supply Agreement.  (*Id.* at ¶ 7; Resp. Ex. A-1, Sherwin-Williams Letter, ECF No. 11-2.)  On February 4, 2016, Defendants mailed their response to this letter to a Sherwin-Williams location in Ohio.  (Caruso Aff. ¶ 8; Resp. Ex. A-2, Defs.' Letter, ECF No. 11-3.)

On September 23, 2016, Sherwin-Williams filed its Complaint.  It alleges that, because Defendants stopped purchasing their requirements in automotive paint products, ACC breached the

-3-

Supply Agreement and Woodard breached the Guaranty.  (Compl. ¶¶ 18–28.)  On November 29, 2016, Defendants filed their Motion to Dismiss, arguing that the case should be dismissed under Federal Rule of Civil Procedure 12(b)(2) because the court does not have personal jurisdiction over them. (Mot. Dismiss 4–13, ECF No. 9.)  In the alternative, Defendants argue that venue is improper and that the case should be transferred to the United States District Court for the Southern District of Alabama, under 28 U.S.C. § 1406.  (*Id.* at 13–15.)  They further argue that, even if venue is proper, the case should be transferred to the Southern District of Alabama in the interests of the parties, under 28 U.S.C. § 1404(a).  (*Id.* at 15–19.)  Plaintiff filed a Response to Defendants' Motion. (Resp., ECF No. 11.)

## II. LEGAL STANDARD

When ruling on a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) without an evidentiary hearing or discovery,[2] "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff," *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996), and it cannot "weigh the controverting assertions of the party seeking dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).  Though the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion, it "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* at 1458.

In a diversity case, the court must "look to the law of the forum state to determine whether

---

[2]     In the caption of its Response, Plaintiff requests an oral argument on Defendants' Motion to Dismiss.  Because Plaintiff has not presented any allegations or averments that dispute Defendants' averments, the court finds that the facts are sufficiently clear and that a hearing is not warranted.

4

personal jurisdiction exists." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1298 (6th Cir. 1989)).  Ohio's long-arm statute is "not coterminous with federal constitutional limits." *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012).  Thus, the court will find that it has personal jurisdiction over a defendant only if the plaintiff "presents a prima facie case that: (1) jurisdiction is proper under a long-arm statute or other jurisdictional rule of Ohio, the forum state; and (2) the Due Process Clause also allows for jurisdiction under the facts of the case." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

### III. LAW AND ANALYSIS

In their Motion to Dismiss, Defendants argue that the court should not hear this case for two alternative reasons. First, Defendants argue that the court should dismiss the case for lack of personal jurisdiction because neither the requirements under Ohio's Long-Arm statute, nor the requirements under the Due Process Clause are met here.  Second, Defendants argue that venue is improper and that the court should either dismiss or transfer the case under 28 U.S.C. § 1406, or, even if venue is not improper, the court should transfer the case under 28 U.S.C. § 1404(a).  Because the court finds that it lacks personal jurisdiction under both Ohio's Long-Arm statute and the Due Process Clause, it does not reach the question of whether venue is proper.

### A. Ohio's Long-Arm Statute

Defendants argue that the court does not have personal jurisdiction over them because none of the Ohio Long-Arm statute's enumerated bases for jurisdiction apply here.  (Mot. Dismiss 4–7, ECF No. 9.)  Plaintiff argues that the court has personal jurisdiction over Defendants because Defendants transacted business in Ohio by entering into the Supply Agreement and Guaranty with an Ohio corporation.  (Resp. 5–8, ECF No. 11.)

5

Ohio's jurisdictional Long-Arm statute, Ohio Rev. Code § 2307.382(A), provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from a person's: (1) Transacting any business in this state . . . ." Ohio Rev. Code § 2307.382(A)(1). Ohio courts interpret the "transacting any business" clause "as meaning 'to carry on business' and 'to have dealings,' and as being broader than the word 'contract.'" *Special Aviation Sys., Inc. v. Aircraft Structures Int'l Corp.*, 323 F. Supp. 2d 839, 843 (N.D. Ohio 2004) (quoting *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236 (1994)). In addition, the Ohio Supreme Court "has long held the mere solicitation of business by a foreign corporation does not constitute transacting any business in Ohio"; instead, an out-of-state defendant's "ties must 'create a substantial connection with the forum [s]tate.'" *U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 185 (1994) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Courts use a two-factor standard to determine whether a party "transacted any business" in Ohio, within the meaning of Section 2307.382(A)(1). *Stein v. Foulk*, No. 5:16 CV 275, 2017 WL 1065727, at *3–4 (N.D. Ohio March 21, 2017). First, courts consider "whether the out-of-state defendant initiated the business dealing." *Paglioni & Assocs., Inc. v. WinnerComm, Inc.*, No. 206-CV-00276, 2007 WL 852055, at *9 (S.D. Ohio Mar. 16, 2007) (citing *Ricker v. Fraza*, 828 N.E.2d 205, 210 (Ohio Ct. App. 2005)). Second, courts consider "whether the parties conducted their negotiations or discussions in the forum state or with terms affecting the forum state." *Id.* (citing *Ricker*, 828 N.E.2d at 210).

Here, these factors weigh in favor of finding that Defendant did not transact any business in Ohio, within the meaning of the Long-Arm statute. First, Plaintiff initiated the business dealing.

6

It is undisputed that LaFrance, a representative from Sherwin-Williams, reached out to Defendants for the purpose of establishing a business relationship.  LaFrance placed telephone calls to Woodard and personally visited ACC in Mobile, Alabama to discuss Sherwin-Williams's automotive paint products.  Second, none of the negotiations or discussions took place in Ohio.  Throughout the negotiation process, Defendants communicated only with LaFrance, a Sherwin-Williams representative from Florida, or with Sherwin-Williams's Alabama representatives.  *See Nat'l City Bank v. Yevu*, 178 Ohio App. 3d 382, 385–386 (Ohio Ct. App. 2008) (finding that there was no jurisdiction over defendant, a Minnesota resident, because, while the defendant made monthly payments to the Ohio plaintiff, he "did not negotiate, carry on business, or have sufficient dealings with [the plaintiff] in Ohio").

Moreover, neither the performance of the contracts nor the alleged contractual breaches took place in Ohio.  ACC operates solely in Alabama, Defendants ordered all paint products from Sherwin-Williams's location in Mobile, Alabama, and Defendants sent each payment to Sherwin-Williams's Mobile location.  *Cf. Indus. Fiberglass Specialties, Inc. v. ALSCO Indus. Prods.*, No. 3:08-cv-0351, 2009 WL 982805, at *6 (S.D. Ohio April 13, 2009) ("In general, personal jurisdiction has not been found in cases where telephone negotiations were the basis of a contract and contract related to a project outside Ohio.").  Though the Supply Agreement contains an Ohio choice-of-law provision, such a provision is not sufficient to show that Defendants transacted business in Ohio.  *See Nat'l City Bank v. Yevu*, 178 Ohio App. 3d 382, 385–86 (Ohio Ct. App. 2008).  In addition to the showing that the contract's performance occurred outside of Ohio, Woodard avers that he has never been to Ohio and that ACC has never transacted or solicited any business in Ohio, and Plaintiff does not dispute these averments.

7

Plaintiff places substantial reliance on *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73 (1990), a case in which the Ohio Supreme Court held that there was personal jurisdiction.  (*See* Resp. 5–7, ECF No. 11.)  The facts there, however, are vastly different from the facts of this case.  In *Kentucky Oaks Mall*, the defendant negotiated a lease "by telephone contact to Ohio," it submitted certain payments to Ohio, and it mailed the signed lease agreement to Ohio. *Kentucky Oaks Mall*, 53 Ohio St. 3d at 75–76, 78; *see also Fergus v. Capitol Strategies Grp., Inc.*, No. 1:14CV900, 2015 WL 1180348, at *2–5 (N.D. Ohio March 13, 2015) (finding that the defendant transacted business in Ohio "[b]ecause the parties conducted negotiations or discussions in the state and agreed on terms obligating [the defendant] to [the plaintiff] in Ohio.").  In the instant case, Defendants did not negotiate or discuss any business dealings by telephone to Ohio, they did not submit payments to any of Plaintiff's Ohio locations, and they did not mail the signed Supply Agreement or Guaranty to Ohio.

Plaintiff emphasizes that Woodard sent a letter to one of its Ohio offices and that many of Plaintiff's own actions under the Agreement took place in Ohio.  (Resp. 2–4, ECF No. 11.)  But Woodard's single, isolated communication, along with Plaintiff's own actions, is insufficient to show that Defendants created a "substantial connection" to Ohio.  *U.S. Sprint Commc'ns*, 68 Ohio St. 3d at 185 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see McMunigal v. Block*, No. 1:09CV01674, 2010 WL 2106186, at *4 (N.D. Ohio May 25, 2010) ("[M]ere communications to an Ohio resident are insufficient to constitute 'transacting business' within the meaning of the Long-Arm statute.").  In addition, Woodard sent his letter to Sherwin-Williams *after* the alleged breach occurred, so the court cannot say that Plaintiff's breach of contract claim "arise[s] from" this communication.  *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429

8

(6th Cir. 2014) ("[T]he Ohio long-arm statute requires a 'proximate cause' relationship between the defendant's act and the plaintiff's cause of action.").

Because Defendants did not have sufficient business dealings with Ohio and because "the mere existence of a contract involving a forum resident" does not satisfy Ohio's Long-Arm statute, *Nat'l City Bank v. Yevu*, 178 Ohio App. 3d at 385, the court finds that it lacks personal jurisdiction over Defendants pursuant to Ohio Rev. Code § 2307.382(A)(1).  But even if the court were to find that Defendants transacted business in Ohio, the circumstances here also fail to meet the requirements under the Due Process Clause.

### B. Due Process Clause

The Due Process Clause requires that the court determine "whether minimum contacts are satisfied so as not to offend 'traditional notions of fair play and substantial justice.'" *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998)).  The Sixth Circuit uses a three-part test in applying this standard:

> (1) First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. (2) Second, the cause of action must arise from the defendant's activities there. (3) Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  If any one of these criterion is not met, the court cannot invoke personal jurisdiction over the defendant.  *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989).  Here, the court finds that none of these criteria are met.

### 1. Purposeful Availment

9

Defendants argue that they did not purposefully avail themselves of the privilege of acting in Ohio because they did not have sufficient contacts with Ohio and did nothing to reach out to the Ohio market. (Mot. Dismiss 7–11, ECF No. 9.) Plaintiff argues that the purposeful availment requirement is satisfied because Defendants contracted with and engaged in an ongoing business relationship with an Ohio corporation. (Resp. 10–11, ECF No. 11.)

To satisfy the purposeful availment requirement, "the *sine qua non* for *in personam* jurisdiction," *S. Mach.*, 401 F.2d 374 at 381, a defendant must "avail[] himself of the privilege of conducting business" in the forum state and be "shielded by the benefits and protections of the forum's laws," *Burger King*, 471 U.S. at 475 (internal quotations omitted). This standard further requires that the defendant must have purposefully entered into a connection with the forum state "such that he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and that "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Burger King*, 471 U.S. 462 at 475 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

Courts hold that the purposeful availment requirement is not met where a defendant did not reach out to and create an ongoing relationship with the forum state. In *Kerry Steel, Inc. v. Paragon Indus., Inc.*, the Sixth Circuit held that a Michigan district court did not have personal jurisdiction over the defendant, an Oklahoma corporation, where the defendant contracted with the plaintiff, a Michigan corporation, to purchase $300,000 worth of steel coils. 106 F.3d 147 (6th Cir. 1997). The court reasoned that it "ha[d] been given no reason to believe that [the defendant] intended to establish 'continuing relationships and obligations' in Michigan" because the plaintiff "initially contacted" the defendant through an "unsolicited sales call" to Oklahoma, that the parties' short-term

10

contract "represent[ed] nothing more than an isolated transaction," and that the defendant did not have any employees or offices in Michigan.  *Id.* at 151–52 (quoting *Burger King*, 471 U.S. at 473). The court acknowledged that the defendant placed telephone calls, sent facsimiles, and sent letters to the plaintiff in Michigan; sent its purchase orders under the contract to Michigan; and sent its initial payments to Michigan.  *Id.* at 148–49, 151–52.  But these limited, direct contacts were insufficient to show that the defendant was "reaching out" to the Michigan plaintiff.  *Id.* at 151–52.

Similarly, Sherwin-Williams has not shown that Defendant reached out beyond Alabama to "create continuing relationships and obligations with citizens" in Ohio.  *Burger King*, 471 U.S. at 473.  As in *Kerry Steel*, Plaintiff's Florida representative initially contacted Defendants in Mobile, Alabama to solicit ACC's business.  None of the negotiations or discussions concerning either the Supply Agreement or the Guaranty took place in Ohio or with one of Plaintiff's Ohio representatives. Defendants do not have any employees or offices in Ohio; they have never transacted any business in Ohio; and they have never had any income or revenue from Ohio.  But Defendants' contacts with Ohio are even more limited than the direct contacts in *Kerry Steel*.  None of ACC's employees communicated with any of Plaintiff's Ohio representatives; Defendants did not order their paint products from or send purchase orders to any of Plaintiff's Ohio locations; and Defendants did not send any payments to Ohio.  Though Woodard sent a response letter to a Sherwin-Williams Ohio office, this letter is not sufficient to show that either the quality or the quantity of Defendants' contacts with Ohio give this court a basis for finding personal jurisdiction.  *Deer Creek*, 885 F.2d 1293, 1301 (6th Cir. 1989) (explaining that courts should consider the quality, not the quantity, of defendants' contacts with the forum state).

To support its view that Defendants purposefully availed themselves of Ohio's jurisdictional

11

reach, Plaintiff points to a number of cases, all of which are factually distinguishable on the basis that the defendants had far more substantial contacts with the forum state than Defendants did here. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (2007) (holding that a defendant purposefully availed itself of Michigan jurisdiction where it initiated a nine-year business relationship with the Michigan plaintiff, mailed a credit-account application to the plaintiff in Michigan, and sent purchase orders to the plaintiff in Michigan); *Cole*, 133 F.3d at 436 (holding that a defendant purposefully availed himself of Ohio jurisdiction by "negotiating and executing a contract via telephone calls and letters to an Ohio resident").

Plaintiff also argues that the business relationships between Sherwin-Williams and Defendants were "continuing" and "undeniably ongoing," unlike the parties' contract in *Kerry Steel*. (Resp. 11, ECF No. 11.) But both the Supply Agreement and the Guaranty had an expiration date, as in *Kerry Steel*, and the mere existence of such a contract, without more, is insufficient to satisfy the purposeful availment requirement. *See Cox v. Koninklijke Philips, N.V.*, 647 F. App'x. 625, 628 (6th Cir. 2016); *Calphalon*, 228 F.3d at 722–23; *but see Fergus*, No. 1:14CV900, 2015 WL 1180348, at *6–7 (noting that "[t]he act of entering into a contract with an in state plaintiff alone does not establish minimum contacts," but finding that the court had personal jurisdiction where the Alabama defendant "created continuing obligations between itself and [the plaintiff]" by entering into an agreement in which it was required to make payments to Ohio and by discussing the agreement in Ohio).

Lastly, Plaintiff argues that the Guaranty "proves [that Woodard] purposefully availed himself of the privilege of doing business in Ohio." (Resp. 12–13, ECF No. 11.) But this argument, too, is unavailing. The Guaranty does not, in any way, connect Defendants to Ohio: it was not

12

executed in or delivered to Ohio; it is not governed by Ohio law and does not contain a forum-selection clause; it does not require that Woodard pay one of Sherwin-Williams's Ohio locations; and its purpose was to aid the performance of the Supply Agreement in Mobile, Alabama, not to develop any business in Ohio. *See First Mich. Bank v. Mueller*, No. 11-10975, 2011 WL 3320524, at *5–6 (E.D. Mich. Aug. 2, 2011) (finding that the defendant did not purposefully avail himself of the Michigan court's jurisdiction because the guaranty was not "intended to assist a business located in Michigan" and because a guaranty, by itself, is not sufficient); *cf. KFC Corp. v. Wagstaff*, 502 B.R. 484, 497–98 (W.D. Ky. 2013) (holding that the defendants' guaranties with a Kentucky company were not enough to establish minimum contacts with Kentucky, the forum state, under Kentucky's Long-Arm statute because the guaranties did not help establish a Kentucky corporation). In the cases cited by Plaintiff, the courts found that the guaranties affected the forum state's economy, unlike this case. *See, e.g., Citizen Bank v. Parnes*, 376 F. App'x 496, 501–02 (6th Cir. 2010) (holding that the defendant purposefully availed himself of the Michigan court's jurisdiction because he signed a guaranty, which was executed in Michigan and governed by Michigan law, for the purpose of "allowing the purchase of [a] Michigan shopping center by an entity in which he had an economic interest"); *Reliance Elec. Co. v. Luecke*, 695 F. Supp. 917, 920–22 (S.D. Ohio 1988) (guaranty induced plaintiff-creditor to extend credit to a third party).

Thus, Plaintiff has not shown that Defendants purposefully availed themselves of Ohio such that the exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice. *Calphalon*, 228 F.3d at 721.

### 2. Arising From Activities in Ohio

Defendants argue that the cause of action does not arise from their activities in Ohio because

13

the alleged contractual breach, as well as the contract's performance, occurred in Mobile, Alabama. (Mot. Dismiss 11, ECF No. 9.) Plaintiff argues that this criterion is satisfied because Defendants entered into contracts with an Ohio corporation, and they accepted an advance from Sherwin-Williams. (Resp. 15–16, ECF No. 11.) In addition, Plaintiff argues that the Supply Agreement contained an Ohio choice-of-law provision, required notice in Ohio, and was monitored in Ohio by Sherwin-Williams. (*Id.*)

The court agrees with Defendants. The Sixth Circuit holds that this criterion is not met "[o]nly when the operative facts are not related to the defendant's contact with the state." *S. Mach.*, 402 F.2d at 384. The "arising from" criterion is not satisfied where the alleged breach occurred outside of the forum state. *Calphalon*, 228 F.3d at 724 (citing *Kerry Steel*, 106 F.3d at 151). As discussed above, both the Supply Agreement and the Guaranty were executed and wholly performed in Mobile, Alabama. Defendants' alleged breach—the failure to purchase automotive paint products exclusively from Sherwin-Williams—also occurred in Mobile, Alabama. Although Plaintiff argues that many of its actions in Ohio pursuant to the parties' contracts can satisfy the "arises from" criterion, the cause of action must arise from *Defendants' contacts* with the forum, not from Plaintiff's own contacts with the forum. Moreover, it is not sufficient that the Supply Agreement contained a notice provision referencing Ohio, nor is it sufficient that the Agreement contained an Ohio choice-of-law provision. *See Calphalon*, 228 F.3d at 722–24.

Therefore, Plaintiff has not shown that the operative facts of its claims arose from Defendants' contacts with Ohio.

### 3. Reasonableness

Defendants argue that their connection with Ohio is not "substantial enough to make exercise

14

of personal jurisdiction over them reasonable." (Mot. Dismiss 12, ECF No. 9 (quotation marks omitted).) Plaintiff argues only that the court should "presume that specific assertion of personal jurisdiction is proper." (Resp. 16, ECF No. 11.)

Under this criterion, courts ask whether "the consequences of the act or breach caused by the defendant have a substantial enough connection with the forum state" in order to determine whether the exercise of jurisdiction is reasonable. *Calphalon*, 228 F.3d at 724. In making this reasonableness determination, courts consider three factors, including: (1) "the burden on the defendant," (2) "the forum state's interest," and (3) "the plaintiff's interest in obtaining relief." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 903 (6th Cir. Apr. 21, 2017) (citing *Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005)).

Defendants are correct that exercising jurisdiction here would be unreasonable. Because neither of the first two criteria are satisfied, Plaintiff is not entitled to an inference of reasonableness. Taking each factor in turn, then, the court first finds that the burden on Defendants would be considerable. ACC only has two locations, both of which are in Alabama, and none of its employees are located in or travel to Ohio. In addition, Woodard is a resident of Mobile County, Alabama. Second, Ohio has little interest in resolving this case. Although Sherwin-Williams is an Ohio corporation, the execution, performance, and breach of the contract all took place in Alabama. *See Steelcon, Inc. v. Beaver Ins. Co.*, 650 F. Supp. 520, 524 (W.D. Mich. 1986) ("[J]urisdiction over the defendant is unreasonable where negotiation and breach of the agreement occurred outside of Michigan and where the contract is performable outside of this state."). Further, Defendants' contacts with Ohio are minimal because ACC has never had any income or revenue from businesses in Ohio, nor has it ever transacted or solicited any business in Ohio. Third, while Plaintiff has an

15

interest in obtaining relief in Ohio, this interest cannot outweigh the previous two factors here. Sherwin-Williams has approximately 68 locations in Alabama, and its employees at its Mobile, Alabama location handled the performance of the Supply Agreement.

The court finds that this criterion, too, is not satisfied. Consequently, the court concludes that the exercise of personal jurisdiction over Defendants is inconsistent with the Due Process Clause's requirements.

### IV. CONCLUSION

For the reasons stated herein, the court grants Defendants' Motion to Dismiss (ECF No. 9) and hereby dismisses the case pursuant to Federal Rule of Civil Procedure 12(b)(2), finding that the court lacks personal jurisdiction over Defendants under the requirements of both the Ohio Long-Arm statute, Ohio Rev. Code § 2307.382(A), and the Due Process Clause.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

July 17, 2017

16